# Exhibit A

| | | |
|---|---|---|
| AOC-E-105    Sum Code: CI<br>Rev. 9-14<br><br>Commonwealth of Kentucky<br>Court of Justice    Courts.ky.gov<br><br>CR 4.02; Cr Official Form 1 | <br><br>**CIVIL SUMMONS** | Case #:  **24-CI-00170**<br>Court:  **CIRCUIT**<br>County: **METCALFE** |

*Plantiff,* **CENTRAL BRIDGE COMPANY, LLC VS. XL INSURANCE AMERICA INC.**, *Defendant*

TO:  **XL INSURANCE AMERICA INC.**
      **TONI A. PERKINS, 677 WASHINGTON BLVD.,**
      **10TH FLOOR, SUITE 1000**
      **STAMFORD, CT 06901**

**RECEIVED**

JAN 0 3 2025

Natalie Osman

The Commonwealth of Kentucky to Defendant:

    You are hereby notified that a **legal action has been filed against you** in this Court demanding relief as shown on the document delivered to you with this Summons. **Unless a written defense is made by you or by an attorney on your behalf within twenty (20) days** following the day this paper is delivered to you, judgment by default may be taken against you for the relief demanded in the attached complaint.

The name(s) and address(es) of the party or parties demanding relief against you or his/her (their) attorney(s) are shown on the document delivered to you with this Summons.

*Tommy A. Garrett*

Metcalfe Circuit Clerk
Date: **12/23/2024**

---

## Proof of Service

This Summons was:

☐ Served by delivering a true copy and the Complaint (or other initiating document)

    To: _____

☐ Not Served because: _____

    Date: _____, 20_____

                                     _____

                                                 Served By

                                                 _____

                                                   Title

---



Page 1 of 1

*eFiled*



This page was intentionally left blank

COMMONWEALTH OF KENTUCKY
METCALFE CIRCUIT COURT
CASE NUMBER 24-CI-_____

CENTRAL BRIDGE COMPANY, LLC

       Plaintiff,

vs.

XL INSURANCE AMERICA INC.

**Serve:**    **Toni A. Perkins**
           **677 Washington Blvd. 10th Floor**
           **Suite 1000**
           **Stamford, CT 06901**

       Defendant.

---

## COMPLAINT FOR DECLARATORY JUDGMENT

Comes the Plaintiff, Central Bridge Company, LLC ("CBC"), by counsel, and for its Complaint for Declaratory Judgment, hereby states as follows:

## I. NATURE OF THE ACTION

1. This is an action pursuant to KRS 418.040 and Kentucky Rule of Civil Procedure 57. This Court has the power and authority to grant or issue judgments for declaratory relief in cases over which it has jurisdiction and where the Court deems declaratory relief to be appropriate.

2. This declaratory judgment action stems from Defendant, XL Insurance America Inc.'s ("XL") refusal to provide a defense to CBC in a lawsuit styled *Metcalfe County, Kentucky*



*v. Keller North America and Central Bridge Company LLC,* Metcalfe Circuit Court, Case No. 23-CI-00100 (the "Underlying Suit").

3.      A duty to defend has been triggered by the terms of the Complaint in the Underlying Suit, the terms of XL's insurance policy issued to Keller North America Inc. (KNA), and the terms of a subcontract between KNA and CBC.

4.      To date, XL has denied multiple tenders of defense and indemnity from CBC.

5.      CBC now seeks a declaration from this Court that XL must defend and indemnify CBC from the claims in the Underlying Suit.

## II. THE PARTIES

6.      CBC adopts and incorporates by reference the allegations contained in Paragraphs 1 through 5 of this Complaint.

7.      Plaintiff, Central Bridge Company, LLC, is a Kentucky limited liability corporation with its principal place of business in the Commonwealth of Kentucky and is authorized to do, and does, transact business within the Commonwealth of Kentucky.

8.      Defendant, XL Insurance America Inc., is a Delaware corporation with its principal place of business in the State of Delaware. Its agent for service of process is Toni A. Perkins, 677 Washington Blvd. 10th Floor, Suite 1000, Stamford, CT 06901.

## III. JURISDICTION AND VENUE

9.      CBC adopts and incorporates by reference the allegations contained in Paragraphs 1 through 6 of this Complaint.

10.     This Court has subject matter jurisdiction over this declaratory judgment action pursuant to KRS 418.040.

11.     An actual, justiciable controversy exists between CBC and XL regarding XL's refusal to honor its duty to defend CBC in the Underlying Suit.

12.     Venue is proper in this Court pursuant to KRS 452.450 because the subcontract between KNA and CBC required work to be performed in Metcalfe County, Kentucky.

## IV. THE UNDERLYING SUIT

13.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1 through 12 of this Complaint.

14.     Metcalfe County initiated the Underlying Suit by filing a Complaint in the Metcalfe Circuit Court on August 14, 2023.  A true and correct copy of the Complaint is attached as **Exhibit 1**.

15.     In its Complaint, Metcalfe County alleges that CBC and/or KNA negligently damaged approximately five (5) miles of Mosby Ridge Road by driving heavy equipment on it after it had recently been paved.  It seeks compensatory damages to repair the road in the sum of $245,985.

16.     In its Complaint, Metcalfe County seeks compensatory damages for the cost of repairs to the road in the amount of $245,985.

## V. THE SUBCONTRACT AGREEMENT

17.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1 through 16 of this Complaint.

3

18.     In May 2022, KNA formed a subcontract with CBC for work on a road construction project in Metcalfe County, Kentucky.  A true and accurate copy of the Subcontract Agreement is attached as **Exhibit 2**.

19.     The Subcontract Agreement imposes insurance, defense and indemnity requirements in favor of CBC.

20.     Paragraph 11 of the Subcontract Agreement entitled "Insurance" requires KNA to purchase various insurance coverages on policies naming CBC as an additional insured.  These include commercial general liability and umbrella coverages.   The Subcontract Agreement further states that such insurance maintained by KNA shall be primary and non-contributory to any other insurance.

### VI. XL'S REFUSAL TO DEFEND CBC IN THE UNDERLYING SUIT

21.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1 through 20 of this Complaint.

22.     On information and belief, and in accordance with the Subcontract Agreement, KNA purchased commercial general liability coverage designating CBC as an additional insured and that such commercial general liability coverage was in effect on August 14, 2022.

23.     On October 14, 2022, the Metcalfe County Fiscal Court notified CBC of damage to Mosby Ridge Road that was caused by a 50-ton excavator with 1-inch track cleats driving down the newly paved road.

24.     The 50-ton excavator was owned and operated by KNA and was being used in the construction project associated with the Subcontract Agreement.

4

25.    Metcalfe County alleged that the associated repairs for the damage caused by KNA's operation of the excavator on Mosby Ridge Road would cost $245,985.

26.    On August 17, 2023, CBC's insurer, The Charter Oak Fire Insurance Company ("Charter Oak"), sent a letter to XL tendering CBC's defense and indemnity in the Underlying Suit pursuant to the Subcontract Agreement and CBC's status as an additional insured under XL's insurance policies issued to KNA. A true and accurate copy of Charter Oak's letter is attached as **Exhibit 3**.

27.    On September 12, 2023, XL sent a letter to Charter Oak denying CBC's tender of defense and indemnity. A true and accurate copy of XL's letter is attached as **Exhibit 4**.

28.    On October 6, 2023, Charter Oak issued another letter to XL demanding that XL defend CBC in the Underlying Suit.  A true and accurate copy of Charter Oak's letter is attached as **Exhibit 5**.

29.    In its October 6, 2023 correspondence, Charter Oak disputed XL's denial of CBC's defense on three separate grounds: (1) additional insureds were covered under XL's policies for any liability "caused, in whole or in part, by [KNA's] acts or omissions"; (2) that, even if CBC allegedly failed to provide an access road to KNA, XL was still required to tender a defense to CBC because the Underlying Suit alleged that KNA was negligent; and (3) XL's denial of coverage to CBC based on a contractual liability exclusion is misplaced as the only allegations by Metcalfe County in the Underlying Suit are based on negligence.

30.    To date, XL has wrongfully refused to defend and indemnify CBC in the Underlying Suit.

## VII. CLAIM FOR DECLARATORY RELIEF

31.     Plaintiff adopts and incorporates by reference the allegations contained in Paragraphs 1 through 30 of this Complaint.

32.      Under the Subcontract Agreement, KNA agreed to procure commercial general liability insurance and name CBC as an additional insured on a primary and non-contributory basis.

33.     In an attempt to comply with that obligation, KNA purchased general commercial liability coverage from XL.

34.     The Underlying Suit brought by Metcalfe County alleges negligence against both CBC and KNA.

35.     CBC is an "additional insured" under the terms, conditions, limitations and endorsements comprising XL's commercial general liability coverage issued to KNA.

36.     XL has wrongfully refused to defend and indemnify CBC in the Underlying Suit.

37.     CBC seeks a declaration that XL must defend and indemnify CBC in relation to the Underlying Suit and that XL must reimburse CBC for defense costs incurred from the point of initial tender to the present.


WHEREFORE, the Plaintiff, Central Bridge Company, LLC, respectfully requests this Court to enter a declaratory judgment against XL Insurance America Inc. declaring the respective rights, statuses and legal obligations of Plaintiff and Defendant, and holding as follows:

a.      XL must defend CBC in the Underlying Suit;

6

Case 1:25-cv-00010-GNS-HBB    Document 1-2    Filed 01/21/25    Page 10 of 51 PageID #: 17

b.      XL is obligated to reimburse CBC's defense costs incurred since the point of initial tender by CBC;

c.      XL is obligated to pay for any settlement reached on behalf of Plaintiff, if any, in the Underlying Suit;

d.      XL is obligated to pay for any judgment which may be rendered against Plaintiff in the Underlying Suit; and

e.      Plaintiff is entitled to recover its attorney fees and costs of this declaratory judgment action and all other appropriate relief.

Respectfully Submitted,

*/s/ Stephen C. Keller*

Stephen C. Keller, Esq.
Zachary M. Sosnovich, Esq.
BARNES MALONEY PLLC
401 W. Main Street, Suite 1600
Louisville, KY 40202
Tel. 502-625-1694
Fax 502-779-9349
skeller@sbmkylaw.com
zsosnovich@sbmkylaw.com
*Counsel for Plaintiff,*
*Central Bridge Company LLC*

7

This page was intentionally left blank

# COMMONWEALTH OF KENTUCKY
## METCALFE CIRCUIT COURT
### CASE NUMBER 23-CI- 00100

COUNTY OF METCALFE, KENTUCKY
By and through METCALFE FISCAL COURT
201 North Main Street, P. O. Box 149
Edmonton, KY 42129                                      **PLAINTIFF**

VS.

CENTRAL BRIDGE COMPANY, LLC
Serve: JOHN WOODALL
201 East Main Street, Suite 100
Lexington, KY 40507

KELLER – NORTH AMERICA, INC.
Serve: CT CORPORATION SYSTEM
306 West Main Street, Suite 512
Frankfort, KY 40601                                      **DEFENDANTS**

## COMPLAINT

Comes the Plaintiff, COUNTY OF METCALFE, KENTUCKY, by THE METCALFE

FISCAL COURT, and for its cause of action herein states as follows:

1. That on or about August 15, 2022 in Metcalfe County, Kentucky the

Defendants, CENTRAL BRIDGE COMPANY and/or KELLER – NORTH AMERICA,

INC., their agents or employees, and/or other unknown Defendants, negligently caused

damage to the surface of Mosby Ridge Road, a county road in Metcalfe County,

Kentucky, for a distance of approximately five (5) miles, by entering onto the recently

paved surface and proceeding down said road with heavy equipment that left severe

grooves in the surface.

FILED IN MY OFFICE
THIS _14_ DAY OF _Aug 2023_
TOMMY A. GARRETT, CLERK
BY _____

2.  That as a result of the negligence of the Defendants, as set out above, the road was damaged in the amount of at least Two Hundred Forty-Five Thousand, Nine Hundred Eighty-Five Dollars ($245,985), based on estimates obtained to date.

3.  That there may be other undiscovered damages not included in the above estimated amount, for which the Defendants will also be liable.

4.  That there may be other undiscovered Defendants who contributed to the damage set out above.  Plaintiff reserves the right to add additional Defendants as may be revealed through discovery herein.

WHEREFORE, Plaintiff demands recovery from the Defendants for the full expense of repair to said damages in the road, including but not limited to the estimated amount set out above, for its costs herein expended and for all other relief to which it may be entitled.

This the _14th_ day of August, 2023.

_Sharon B. Howard_
Sharon B. Howard, Metcalfe County Attorney
Post Office Box 999
Edmonton, KY  42129-0999
Telephone:  270-432-0777
Facsimile:  270-432-0310

DocuSign Envelope ID: ED49647FD600-49C-65AB-F0609r20447    Tommy A. Garrett, Metcalfe Circuit Clerk



# CENTRAL BRIDGE COMPANY, LLC
# SUBCONTRACT AGREEMENT

## Agreement Date:  5/24/22

THIS SUBCONTRACT is made and entered into by and between <u>Keller North America Inc.</u>, with its principal place of business at <u>1838 S. Preston Highway, Shepherdsville, KY 40165</u> ("Subcontractor"), and Central Bridge Company, LLC, with its principal place of business at 3009 Atkinson Avenue, Suite 200, Lexington, KY 40509 ("Contractor").

WHEREAS, Contractor has been awarded a contract for the construction project known as (the "Project") for Kentucky Transportation Cabinet, Frankfort, Kentucky 40622 ("Owner"). The terms of this contract are more specifically set out in an agreement between Owner and Contractor dated <u>5/24/22</u> and bearing Contract ID Number <u>225238</u> (the "Prime Contract").

IT IS THEREFORE AGREED between Contractor and Subcontractor as follows:

## 1.    SCOPE OF WORK

Subcontractor shall furnish ~~all~~ labor, ~~materials, supplies,~~ services, equipment, machinery, tools, supervision, and other items required to fully complete the portion of work on the Project as described herein and shall fully perform the items of work at the unit prices indicated on **Attachment A**.    GT

All labor, ~~materials, supplies,~~ services, equipment, machinery, tools, supervision, and other items provided by Subcontractor on the Project will be provided in accordance with all terms, covenants and conditions of the Prime Contract.  The Subcontractor acknowledges that all provisions, conditions, plans, drawings, specifications and addenda contained in the Prime Contract are incorporated by reference into this Subcontract.  Copies of the Prime Contract are available for inspection by the Subcontractor at the Contractor's office.    GT

*Central Bridge Company, LLC*
*Equal Opportunity Employer*
3009 Atkinson Ave.    Suite 200    Lexington, KY 40509
Phone 859.223.7001

Filed    24-CI-00170    12/23/2024    Tommy A. Garrett, Metcalfe Circuit Clerk

## 2.    SUBCONTRACT PRICE

Subcontractor shall be paid by Contractor, for the satisfactory performance and completion of Subcontractor's work described herein and all of the duties, obligations and responsibilities of the Subcontract under the Subcontract Documents, at the rate of the unit prices set forth in Attachment A of this Subcontract (the "Subcontract Price") and subject to any additions and deductions as provided herein. It is specifically acknowledged and agreed by Subcontractor that the quantities of items set forth in Attachment A are estimated quantities only and that the earnings of Subcontractor under this Subcontract shall be determined by the quantities of work that are actually allowed and paid to Contractor by Owner.

The Subcontract Price includes all federal, state, county, municipal and other taxes and assessments imposed by law and based upon labor, services, materials, equipment or other items acquired, performed, furnished or used for or in connection with the Subcontractor's work, including, but not limited to, sales, use and personal property taxes payable by or levied against the Owner, Contractor or the Subcontractor. Where the law requires any such taxes or assessments to be stated and charged separately, the total price of all items included in Subcontractor's work, plus the amount of such taxes shall not exceed the Subcontract Price.

## 3.    WORK ORDER ISSUANCE REQUIRED

The provisions of this Agreement shall not be binding upon the Contractor unless and until the Owner has issued a Work Order to the Contractor, under the terms of the present Prime Contract, above mentioned, between the Contractor and Owner, prior to which time it is agreed that this Subcontract shall constitute an irrevocable offer by the Subcontractor to the Contractor.

## 4.    SUBCONTRACT DOCUMENTS

The Subcontract Documents consist of (1) this Subcontract (including Attachment A & B), (2) the Prime Contract, consisting of the agreement between the Owner and Contractor and the other Contract Documents enumerated therein including, but not limited to, the Conditions (General, Special, Supplementary and other Conditions), Drawings, Plans, Specifications, Addenda and Modifications, whether issued before or after the execution of this Subcontract, and other Contract Documents, if any, listed in the Prime Contract, (3) any other documents specifically incorporated into this Subcontract by reference herein, and (4) modifications to this Subcontract issued after execution, all of which are hereby

referred to and made a part of this Subcontract as though fully set out in this Subcontract (collectively referred to as the "Subcontract Documents").

This Subcontract shall be performed in strict accordance with the Subcontract Documents and to the satisfaction of Contractor and Owner. The Subcontractor represents and agrees that it has carefully examined and understands the Subcontract Documents, copies of which have been and remain available for inspection and copying by Subcontractor, that it has investigated the nature, locality and site of the Project and the conditions and difficulties under which it is to be performed, and that it enters into this Subcontract on the basis of its own examination, investigation and evaluation of all such matters and not in reliance upon any opinions or representations of Contractor, Owner, or any of their respective officers, agents or employees.

## 5.   **PAYMENT**

(a)   <u>Progress Payments & Retainage</u>   Subcontractor shall be paid by Contractor at the rate of the unit prices listed in Attachment A for all work performed to the satisfaction of the Owner and Contractor and materials and supplies furnished to the satisfaction of the Owner and Contractor. Payment to Subcontractor is conditioned upon Contractor's prior receipt of payment from Owner and shall be on or about ten (10) days after receipt by the Contractor of the payment from the Owner, subject to and less any retainage under the Prime Contract up to the date of the last application for payment, less all prior payments. The retainage attributable to the work performed by the Subcontractor will be paid by the Contractor to the Subcontractor within ten (10) days after payment of the retainage to the Contractor by the State. It is specifically acknowledged and agreed by Subcontractor that no payment by Contractor to Subcontractor shall be construed as acceptance of any portion of Subcontractor's work, a waiver of any defect or deficiency in Subcontractor's performance or relieve Subcontractor of any of its obligations arising out of this Subcontract. Should Contractor at any time determine that payment has been made to Subcontractor, or on Subcontractor's behalf, in excess of the amount then due for work under this Subcontract, then Subcontractor shall promptly repay such excess to Contractor within three (3) days of demand for repayment.

(b) <u>Final Payment</u> Final Payment shall be made by Contractor to Subcontractor after completion and acceptance of the Subcontractor's work by Contractor and the Owner provided that (1) Contractor shall have first received final payment from the Owner, (2) Subcontractor shall have furnished, if requested, evidence satisfactory to Contractor that there are no claims, obligations or liens outstanding or



unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred for or in connection with the Subcontractor's work, and (3) Subcontractor shall have executed and delivered to Contractor, in a form satisfactory to Contractor, a Release of Lien and an Affidavit of Payment running to and in favor of Contractor and the Owner.

(c)  <u>Payments Withheld</u>  Subcontractor shall meet all of its obligations and liabilities pertaining to this Subcontract on a timely basis and shall furnish, at any time requested, evidence satisfactory to Contractor that there are no claims outstanding or unsatisfied for labor, services, materials, equipment, taxes or other items performed, furnished or incurred for or in connection with Subcontractor's work.  In the event that Subcontractor does not comply with the above, Contractor may retain from monies owing to Subcontractor sufficient sums to indemnify Contractor and Owner against any claims or obligations related to this Subcontract.  Contractor may disburse monies owing to the Subcontractor as Contractor may determine necessary, including by joint check arrangements or payments directly to persons or entities claiming by or through Subcontractor, to satisfy the above claims against or obligations of Subcontractor. Should Contractor advance money to Subcontractor or pay on its behalf any bills, accounts, labor or other items, such advances, disbursements and payments may be deducted from amounts due or to become due to Subcontractor or the retained percentage, at the option of Contractor.  Should such advances and payments be in excess of the total amount finally due Subcontractor, then Subcontractor shall promptly repay such excess to Contractor on demand.

## 6.  <u>COMMENCEMENT DATE & COMPLETION</u>

Time is of the essence in the Prime Contract and it is expressly acknowledged by the Subcontractor that time is of the essence in its performance of this Subcontract.  Subcontractor shall prosecute the Subcontract work with all possible diligence and all possible speed in order to insure completion of the work at the earliest possible date and shall fully cooperate with Contractor in scheduling and performing the Subcontract work to avoid conflict, delay in or interference with the work of the Contractor or others on the Project.  ~~Subcontractor shall begin its work within five (5) days of receiving the notice to proceed from Contractor.~~  In the event that Subcontractor does not perform its work promptly and the completion of the Project is delayed, Subcontractor shall assume and pay ~~any~~ damages including, but not limited to, any liquidated damages provided by the Prime Contract, that may be incurred by or assessed against the Contractor.  No extension of time will be valid without the Contractor's prior written consent after receiving a written claim for adjustment from the Subcontractor.

GT

Filed                     24-CI-00170   12/23/2024   Tommy A. Garrett, Metcalfe Circuit Clerk
DocuSign Envelope ID: ED49041743003-493C-03AB-F0070/2044/

~~Contractor shall not be liable to Subcontractor for any costs or damages due to delays, escalation, accelerations, nonperformance, interferences with performance, suspensions, or changes in the performance or sequence of the Subcontractor's work.~~  Should this Subcontract, in whole or in part, be interfered with or delayed, or be suspended in commencement, prosecution or completion, for reasons beyond the Subcontractor's control, without its fault or negligence, Subcontractor shall be entitled to, and shall be fully compensated by, an extension of time in which to complete its work.  However, such extension shall be given only if Subcontractor first notifies Contractor in writing of the cause of delay within two (2) days of the occurrence of the event and on the further condition that Contractor shall have received a similar extension of time from the Owner. **and compensation for any cost impacts due delay or change of conditions outside subcontractor control.**

**GT**

**GT**

## 7. INTERUPTION OF WORK

Subcontractor shall not employ any personnel or means of construction which may cause strikes, work stoppages, work interruption or hindrance, or any other disturbances, of any nature whatsoever by Contractor's employees or the employees of any other contractor or subcontractor on the Project with respect to any work related to this Subcontract Agreement or the Project.

## 8. SUBCONTRACTOR DEFAULT

Should the Subcontractor fail, in the opinion of Contractor, to prosecute the work with sufficient force and speed, or default or neglect to carry out the work in accordance with this Subcontract, or cause by any act or omission the stoppage or delay of or interference with or damage to the work of Contractor or of any other contractors or subcontractors on the Project, including but not limited to any violation of the provisions of Paragraph 6 above, or fail in the performance of any of the terms and provisions of this Subcontract or the Subcontract Documents, or should the Owner or Contractor determine that Subcontractor's work or any portion thereof is not being performed in accordance with the Subcontract Documents, or should there be filed by or against Subcontractor a Petition in Bankruptcy, or should the Subcontractor become insolvent or be adjudicated bankrupt, or go into liquidation or dissolution either voluntarily or involuntarily, or make a general assignment for the benefit of creditors, or otherwise acknowledge insolvency, then in any of such event, each of which shall constitute a default by Subcontractor, and Subcontractor fails to immediately take measures to commence and continue



correction of such default or neglect with diligence and promptness, the Contractor may, at its option and in addition to any other rights and remedies provided by this Subcontract or by law, elect to proceed in any one or more of the following manners:

(1)    Contractor may employ and use on said work, or any portion thereof, such number of workers, laborers, supervisors, teams, tools, machinery, equipment and/or other subcontractors, at such wages, prices and rates as Contractor may deem necessary and expedient to insure the prompt completion of the work and Project, and it shall charge all of same to Subcontractor;

(2)    Contractor may re-let the work, either in whole or in part, to such other persons or entities as it may desire, at such prices as it may deem proper, and shall charge the costs thereof to Subcontractor;

(3)    Contractor may declare the rights of Subcontractor under this Subcontract to be terminated and, in such event, Subcontractor shall only be paid for the actual work done by it to the date of termination, less the amount of any damages, claims, obligations or liabilities incurred by Contractor or Owner by virtue of Subcontractor's actions; or

(4)    Contractor may terminate the employment of Subcontractor for all or any portion of the Subcontractor's work, enter upon the premises and take possession of, for the purpose of completing the Subcontractor's work, all materials, ~~equipment, tools, appliances and other items thereon, all of which the Subcontractor hereby transfers, assigns and sets over to Contractor for such purpose,~~ and to employ any person or persons to complete the Subcontractor's work and provide all of the labor, services, materials, equipment and other items required therefore.  In any such event, Subcontractor shall remain bound, and all other terms of this Subcontract shall remain in force, to the extent of the work or areas which have not been so terminated.  In case of such termination of Subcontractor, it shall not be entitled to receive any further payment under this Subcontract until the Subcontractor's work shall be fully completed to the satisfaction of Contractor and the Owner and shall have been accepted by them, at which time, if the unpaid balance of the amount to be paid under this Subcontract shall exceed the costs and expenses incurred by Contractor in completing the Subcontractor's work, such excess shall be paid to Subcontractor; but in the event that such costs, and expenses, shall exceed the unpaid

GT

balance of the Subcontract Price, then Subcontractor shall pay the difference to Contractor upon demand.

For purposes of this paragraph, the costs and expenses recoverable by Contractor from Subcontractor for Subcontractor default shall include, in addition to the costs of completing the Subcontractor's work to the satisfaction of Contractor and the Owner and of performing and furnishing of all labor, services, materials, equipment and other items required therefore, but also all losses, damages, claims, obligations, liabilities, costs and expenses, including attorneys' fees and costs, incurred or suffered by Contractor by reason of or resulting from the Subcontractor's default or in the collection of amount owed by Subcontractor for its default.

## 9. **CHANGES**

Subcontractor may, at any time during the progress of Subcontractor's work, be ordered in writing by Contractor, without invalidating this Subcontract, to make changes in the work of this Subcontract consisting of additions, deletions, deviations, or other revisions, including those required by modifications to the Prime Contract issued subsequent to the execution of this Subcontract, the Subcontract Price and the time for completion being adjusted accordingly. Subcontractor shall, prior to the commencement of such changed or revised work, submit promptly to Contractor written copies of a claim for adjustment to the Subcontract Price and completion time for such revised work in a manner and time consistent with the requirements of the Subcontract Documents. No change orders or modifications of this Subcontract, whether for extras or otherwise, shall be valid unless authorized by the Contractor in writing after receipt of Subcontractor's claim for adjustment. Failure of the Subcontractor to make such a timely claim for adjustment shall bind the Subcontractor to the same consequences as those to which the Contractor is bound to the Owner.

In the event that Contractor and Subcontractor should not be able to agree as to the amount to be allowed as an adjustment to the Subcontract Price and time for completion for any changes made pursuant to this paragraph, it shall, nevertheless, be the duty of Subcontractor to proceed immediately with such change(s) upon written notice from Contractor. In any such event the determination of the appropriate adjustment to the Subcontract Price and time for completion for such revised work shall be resolved thereafter by mutual agreement or in accordance with Paragraph 13 below pertaining to dispute resolution.

DocuSign Envelope ID: ED49641745686-490-68AB-F26C23/2024;   Tommy A. Garrett, Metcalfe Circuit Clerk

**9.**     **INDEMNIFICATION**

      The Subcontractor shall indemnify, defend and hold Contractor, Owner and their respective agents and employees harmless from and against all claims, demands, losses, attorneys' fees and costs, payments, suits, actions, recoveries and judgments of every nature and description brought or recoverable against Contractor, Owner and their respective agents and employees by reason of any alleged or claimed act, obligation or omission of the Subcontractor in the performance of this Subcontract, including Subcontractor's agents, employees, suppliers, manufacturers, or other persons or entities for whose acts the Subcontractor may be responsible  This indemnification provision is triggered by the mere claim, demand, or lawsuit against Contractor, which involves any alleged or claimed act, obligation or omission by Subcontractor in performance of this Subcontract, including any person or entity for which Subcontractor may be responsible.   This indemnification agreement is binding on the Subcontractor, to the fullest extent permitted by law, regardless of whether any or all of the persons or entities indemnified hereunder are responsible in part for the claims, damages, losses or expenses for which the Subcontractor is obligated to provide indemnification.  This indemnification provision does not negate, abridge or reduce any other rights or obligations of the persons and entities described herein with respect to indemnity.

**10. RISK OF LOSS**

      The Subcontractor assumes all risk against injury, loss, or damage to labor and/or materials furnished by it until final acceptance by the Owner for all work embraced in this Agreement, and to that end shall carry such insurance as he may deem necessary. Further, the Subcontractor shall continuously maintain adequate protection of all his work from damage until final acceptance and payment, including but not limited to property damage insurance in such deductibles and limits as shall enable the Subcontractor to repair any such damage, and shall  protect the State's property, the Contractor's property, and any other property of any subcontractor or third party from injury arising in connection with this Agreement, and shall make good any such damage or injury. Without in any manner, limiting the foregoing, Public Liability, Personal Injury and Property Damage Insurance, and Workman's Compensation Insurance shall be maintained by the Subcontractor in adequate amounts if not specified by the Prime Contract and its companies acceptable to the Contractor until the work is finally accepted by the Owner.

Filed Envelope ID: ED4964172986E400-60A5-... 12/23/2024 Tommy A. Garrett, Metcalfe Circuit Clerk

## 11. **INSURANCE**

Upon Execution of this Subcontract Agreement, the Subcontractor shall deliver to the Contractor certificate(s) from Subcontractor's insurers certifying policy number, expiration dates, limits, etc., which certificate(s) shall provide that the policies represented thereon shall neither be canceled, altered, or changed until ten (10) days after actual receipt by the Contractor of written notice from the insurer of its intention to make such cancellation, alteration or change. The Subcontractor shall procure and maintain in force worker's compensation insurance, employer's liability insurance, comprehensive general liability insurance, automobile liability insurance and all insurance required of the Contractor under the Contract Documents. The required policies shall be obtained from insurance companies with and A.M. Best Financial Strength Rating of no less than "A-". Subcontractor shall maintain ~~at least~~ the following limits of insurance coverage:

(I.) General Liability

Coverage Details:   Commercial General Liability (must be maintained for at least 5 yrs or as required by contract)
Occurrence Form- Per Project/Location Aggregate Limit
Contractual Liability
Explosion, Collapse, and Underground Liability (if applicable)
Completed Operations Coverage
Broad Form Property Damage
Independent Contractors

Limits of Insurance:   $2,000,000 General Aggregate
$2,000,000 Products & Completed Operations Aggregate (must be maintained for at least 5 yrs or as required by contract)
$1,000,000 Personal & Advertising
$1,000,000 Each Occurrence

(II.) Automobile Liability

Coverage Details:   All Owned, Leased, Non-owned & Hired vehicles,

Limits of Liability:   $1,000,000 per accident

(III.) Excess or Umbrella Liability

Limits of Liability:   $1,000,000



(IV.)   <u>Workers Compensation</u>

|  |  |
|---|---|
| Coverage Details: | Statutory Coverage in each state of operation or "all states" coverage.<br>Applicable Federal (i.e. Longshoreman's Statutory) if applicable. |
| Limits of Liability: | $1,000,000  Each Accident Bodily Injury<br>$1,000,000  Policy Limit Bodily Injury by Disease<br>$1,000,000  Each Employee Bodily Injury by Disease |

Subcontractor shall provide Contractor with a certificate of insurance certifying that the required insurance policies are effective and will not be cancelled during the Subcontractor's performance of this Subcontract.  In addition, the Subcontractor shall procure and maintain insurance coverage, endorsements and policy limits as shall be acceptable to Contractor, providing coverage for all exposures to liability for pollutants, hazardous materials, and environmental hazards. Subcontractor is required to obtain a waiver of Subrogation on the CGL, Business Automobile, Workers' Compensation and Umbrella Liability policies.

The Contractor and Owner shall be named as an additional insured on each of these policies except for worker's compensation.   All applicable additional Insured Standard Endorsements are required.  All policies with the exception of workers compensation shall include a waiver of subrogation.   The Subcontractor shall maintain in effect all insurance coverage required under this Subcontract at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor and shall provide Contractor with written proof of such coverage at the Contractor's discretion.   This insurance coverage provided by Subcontractor shall be primary and non-contributory to any other insurance. Thirty (30) days notice of cancellation is required. Builder's Risk/Installation Floater (if required) in an amount equal to your contract.

## 12.   <u>KENTUCKY ASSOCIATION OF HIGHWAY CONTRACTOR DUES/PRO RATA</u>

Contractor may, in its discretion, deduct from the Subcontractor's payment monies sufficient to cover the Subcontractor's pro rata share of the Contractor's bonding costs. Subcontractor agrees to pay its share of the Kentucky Association of Highway Contractor dues.

DocuSign Envelope ID: ED49641F-D680-419C-85AB-FDB8757D2447

**13.  WARRANTY**

Subcontractor warrants to the Contractor and Owner that all materials and equipment furnished under this Subcontract will be of good quality and new unless otherwise required or permitted by the Subcontract Documents, that the work under this Subcontract will be free from defects not inherent in the quality required or permitted, and that Subcontractor's warranty and work will conform in all respects with the requirements of the Prime Contract and the Subcontract Documents. Work not conforming to these requirements, including substitutions not properly approved and authorized, may be considered defective.  This warranty shall be in addition to, and not in limitation of, any other warranty or remedy provided by law or by the Subcontract Documents.

**14.  DISPUTE RESOLUTION**

Any claim, controversy or dispute between the Contractor and Subcontractor arising out of or related to this Subcontract, or a breach hereof, and which claim, controversy or dispute is not resolved by mutual agreement between the parties, shall, unless otherwise required by the Prime Contract or applicable law, be submitted to a judicial court of competent jurisdiction located in Fayette County, Kentucky.  The Subcontractor further covenants and agrees that no dispute shall interfere with the progress of Subcontractor's work and the Subcontractor agrees to proceed with the Subcontract work as required in spite of any claim, controversy or dispute it may have with Contractor, the Owner or other parties.

**15.  LAWS, PERMITS, FEES & NOTICES**

The Subcontractor shall give all notices required by and comply with all laws, ordinances, rules, regulations and orders of any public authorities applicable to the performance of the Subcontract work including compliance with the Fair Labor Standards Act by this Subcontractor and any lower-tier Subcontractors. ~~The Subcontractor shall secure and pay for all permits, fees, licenses and inspections necessary for proper execution and completion of the Subcontractor's work as required by the Subcontract Documents.~~

GT

The Subcontractor shall abide by all laws, ordinances, rules, regulations and orders of any state and federal authorities applicable to the Environmental Protection Act and/or water and air pollution

requirements.

Subcontractor further covenants and agrees to pay its own payrolls, taxes and all other costs and expense associated with the work required under this Subcontract, to furnish Contractor with copies of all weekly payrolls and other documentation showing compliance with applicable laws and regulations, if required, to furnish Contractor with copies of Material Safety Data Sheets for all materials used on the Project and a copy of Subcontractor's written hazard communication program, and acknowledges and agrees that any payment received by Subcontractor shall be held in trust for the purpose of paying its subcontractors, laborers, material men, suppliers and any others claiming by or through Subcontractor and who may be entitled to assert a lien or other claim against the Project.

The Subcontractor expressly agrees to make and file promptly all requisite reports with Federal, State, County, and Municipal Authorities. Subcontractor accepts exclusive liability for, and agrees to pay when due, any tax assessment, premium or contribution relative to or for old age insurance, unemployment insurance, social security or income withholding levied by any Federal, State, County or Municipal Government on the salaries or wages of all persons employed by the Subcontractor, or by any subcontractor, direct or remote, under him; and this obligation shall require the Subcontractor to pay or have paid any sum or sums levied by any Federal, State, County or Municipal Authority because of use or employment of labor on the work embraced in this Agreement either by the Subcontractor, or by any direct or remote subcontractor under him whether the assessment or levy be made against the Contractor or against the Subcontractor, and from the payment of all of which the Subcontractor agrees to indemnify and hold the Contractor harmless therefrom. Subcontractor agrees to pay all Federal, State, County, Municipal and State Sales and Use or Excise Taxes and other taxes as may be required by reason of work done and material furnished under this Agreement and shall indemnify and hold the Contractor harmless therefrom. Subcontractor further agrees that the cost of all such Sales and Use or Excise Taxes and other taxes have been included in the prices set forth in this Agreement.

16. **REMOVAL OF EQUIPMENT**

Subcontractor shall not, ~~without the prior consent of Contractor~~, remove or permit to be removed from the Project, any equipment, machinery, tools, materials, supplies or other items that have been purchased for or placed on the Project for use in connection with the Project until the Subcontract work has been completed.

Filed        DocuSign Envelope ID: ED496417-D66B-490-C8AD-FDC8/2024/        Tommy A. Garrett, Metcalfe Circuit Clerk

## 17.   RENTAL EQUIPMENT

If Subcontractor makes use of Contractor's equipment, Subcontractor shall pay current AED rental rates, or the rates commonly charged in the area where the work is to be performed in the event that AED rental rates are not provided, unless otherwise agreed to by the parties in writing.

## 18.   CLEANUP

Subcontractor shall keep the Project site and surrounding area free from accumulation of waste materials or rubbish caused by operations performed under this Subcontract and shall, upon completion of its work, leave the Project site in a clean and orderly condition.

## 19.   TRAFFIC CONTROL & SAFETY DEVICES

Subcontractor shall not remove or alter any traffic control devices, safety equipment, safety guards or safety appliances unless Subcontractor has secured the express consent of Contractor or Contractor's authorized representative.  Subcontractor shall replace such devices, guards and appliances promptly and failure to make such replacement will authorize Contractor to do such work and charge the costs thereof to Subcontractor.  Subcontractor assumes all responsibility for removal or alteration of any traffic control devices, safety equipment, safety guards or safety appliances.

## 20.   EQUAL EMPLOYMENT OPPORTUNITY & AFFIRMATIVE ACTION

Subcontractor shall comply fully with the Fair Labor Standards Act of 1983, the Civil Rights Act of 1964, and shall not discriminate against any employee or applicant for employment because of race, creed, color, sex, age, religion, national origin, physical or mental handicap, or because he or she is a disabled veteran or veteran of the Vietnam era.  Subcontractor agrees to take affirmative action to insure that qualified applicants are employed, and that employees are treated during employment, without regard to race, creed, color, sex, age, religion, national origin, gender identity, physical or mental handicap, or status as a disabled veteran or veteran of the Vietnam era.

To the extent applicable, Subcontractor shall comply with all provisions of Executive Order No. 11246, dated September 24, 1976; the Vietnam Era Veterans Readjustment Assistance Act of 1974, the Rehabilitation Act of 1973, and all amendments thereto, and all rules, regulations, orders, instructions,



DocuSign Envelope ID: ED498417-960E-490D-80AD-F... 12/23/2024;  Tommy A. Garrett, Metcalfe Circuit Clerk

designations and other directives promulgated pursuant thereto, the terms of all of which are incorporated herein by reference. Violation of this provision shall be considered a material breach of this Subcontract and shall entitle Contractor to exercise any of the options set forth in Paragraph 7, including termination or suspension of this Subcontract in whole or in part.

## 21.  **REGULATORY COMPLIANCE**

Subcontractor certifies that it is in compliance with the Occupational Safety and Health Administration (OSHA) standards and any EPA, Erosion Control, Kentucky Division of Water standards and regulations applicable to this project. The Subcontractor also certifies that the Subcontractor's employees have had all necessary safety training required by OSHA and the hazards they may face on the job and Environmental education needed to comply with all EPA standards. The Subcontractor hereby agrees to fully comply with all OSHA and EPA requirements in effect at the time of the Subcontractor's performance under this contract. The Subcontractor acknowledges that its compliance with the applicable OSHA and EPA requirements shall be the sole responsibility of the Subcontractor and not the Contractor. Notwithstanding the foregoing and without creating responsibility for the Contractor to do so, the Contractor may take any action it deems appropriate if it observes or becomes aware that the Subcontractor is not complying with applicable OSHA or EPA requirements, including requiring the Subcontractor to stop work until the Subcontractor complies with the applicable OSHA or EPA requirements and any cost incurred by the Contractor to remedy the compliance shall be reimbursed by the Subcontractor, including any cost incurred for stoppage of work. The Subcontractor agrees to indemnify, defend, and hold harmless the Contractor from any claim or action for any injury or damage caused by Subcontractor's failure to fully comply with the applicable OSHA and EPA requirements. Furthermore, the Subcontractor will promptly notify the Contractor of any Compliance Safety and Health Officer of the Occupational Safety and Health Administration, State of Kentucky or any inspector of any State Plan approved by (OSHA) that arrives on the worksite. The Subcontractor further will not allow any OSHA inspector to inspect any portion of the worksite until the Contractor has been consulted and given a chance to attend the inspection (as allowed under OSHA regulations) unless OSHA has defined the visit as imminent danger, regardless the Contractor must be notified immediately. The Subcontractor will also not allow any OSHA Compliance Safety and Health Officer into any other area of the worksite that is not specifically related to Subcontractor's specific work or to which the Subcontractor's employees are exposed. The

Subcontractor shall promptly correct any violations identified by the OSHA inspector or any state agency, Contractor, owner or any other Subcontractor which it has control. The Subcontractor shall also notify the Contractor of any other condition or hazard created by the Subcontractor or any other Subcontractor's worker under the control of the Subcontractor to which the Contractor's or the Subcontractor's employees are exposed or could be exposed to in the future. The Subcontractor will also make every effort practical to prevent non-authorized persons from entering any work area of the project. The Subcontractor is requested to consult the Contractor when it is not known if a person is authorized or not.

## 22. **ASSIGNMENT**

Subcontractor shall not sublet or assign any portion of this Subcontract, nor any monies due or to become due, or Subcontractor's earnings and compensation hereunder, without the prior written consent of Contractor. Any such assignment or subletting without prior written consent of Contractor shall be void and of no effect.

## 23. **NOTICE**

All notices, demands and other communications provided for in this Subcontract shall, unless otherwise provided, be sufficient if in writing and if delivered personally to the other party, or mailed by United States Mail, postage prepaid, to the respective addresses of Contractor and Subcontractor as set forth herein, or such other address as either may have designated from time to time.

**TO CONTRACTOR:**    Central Bridge Company, LLC
3009 Atkinson Avenue, Suite 200
Lexington, Kentucky 40509

**TO SUBCONTRACTOR:**    Keller North America Inc.
1838 S. Preston Highway
Shepherdsville, KY 40165

Contractor may exercise any right given to it immediately after mailing the letter containing such notice. However, this right does not preclude a Contractor from giving notice in any other legal matter.



24.     **GOVERNING LAW**

    This Subcontract shall be governed by the laws of the Commonwealth of Kentucky and any action by the Subcontractor against the Contractor as a result of this Contract shall be brought in Fayette County, Kentucky, Circuit Court.

25.     **SEVERABILITY & WAIVER**

    The partial or complete invalidity of any one or more provisions of this Subcontract and the Subcontract Documents shall not affect the validity or continuing force and effect of any other provision or the application of such provisions to persons and circumstances other than those as to which it is determined invalid or unenforceable.  The failure of Contractor to insist, in any one or more instances, upon the performance of any of the terms, covenants or conditions of this Subcontract or to exercise any right herein, shall not be construed as a waiver or relinquishment of such term, covenant, condition or right.

26.     **SAFETY**

    Subcontractor agrees to provide its employees with a safe place to work, to perform the Subcontract work in a safe manner and to comply with all health and safety provisions of the applicable Federal, state and municipal agencies. Subcontractor will be responsible for his Safety and Quality Control Programs as it pertains to the work be performed on the project.  Subcontractor further agrees that it will cooperate with the Contractor's Safety Director and appointed safety personnel on the Project.

    Subcontractor expressly acknowledges that failure to correct or prevent unsafe conditions or conduct, failure to comply with the above-mentioned health and safety provisions or failure abide by the Contractor's Safety Director or personnel may constitute a breach of this Subcontract and result in immediate termination of Subcontractor.  Additionally, Subcontractor agrees to hold Contractor harmless for any damages, costs, deficiencies or fines resulting from Subcontractor's failure to correct or prevent unsafe conditions or conduct, failure to comply with the above-mentioned health and safety provisions or failure abide by the Contractor's Safety Director.

27.     **ENTIRE AGREEMENT**

This Subcontract represents the entire and integrated agreement between the Contractor and Subcontractor and supersedes all prior negotiations, representations or agreements, either written or oral, and shall not be altered, modified or amended in any manner whatsoever unless the same shall be in writing and signed by the parties.

By affixing our signatures below, we, the authorized undersigned representatives of the Contractor and Subcontractor, affirm that we have read and understand the terms of this Subcontract Agreement and agree to abide by said terms, which include the Prime Contract and all applicable laws, regulations and standards.

**CONTRACTOR, Central Bridge Company, LLC**

By:  President            Joshua R. Whitaker

Title: Joshua R. Whitaker

Date: 6/3/2022

**SUBCONTRACTOR,  Keller North America Inc.**

By:

Title:  Branch Manager

Date:        6-2-22



This page was intentionally left blank



Erin Fowler
**The Charter Oak Fire Insurance Company**
*Claim Representative*

*Mailing Address:*
*P.O. Box 430*
*Buffalo, NY 14240-0430*

*(216)750-4082(phone)*
*(877) 389-4687 (fax)*
*EPFOWLER@travelers.com*

August 17, 2023


Sent via email only: raymond.peachey@axaxl.com


XL Insurance America Inc.
Attn: Raymond Peachey


| Subject: | Our Insured: | Central Bridge Company, LLC |
|---|---|---|
| | Your Insured: | Keller North America, Inc. |
| | Claimant: | Metcalfe County Kentucky Fiscal Court |
| | Date of Loss: | 8/15/2022 |
| | Our Claim Number: | FDV1677 |
| | Your Claim: | 10115060 |
| | Re; | *County of Metcalfe, Kentucky v Central Bridge Company, LLC.; and Keller-North America, Inc.,* No. 23-CI-00100, Metcalfe Circuit Court, Commonwealth of Kentucky |


Dear Mr. Peachey:

Please be advised that The Charter Oak Fire Insurance Company ("Travelers") is the commercial general liability insurance carrier for Central Bridge Company, LLC. ("Central"). We have been notified of a lawsuit brought against Central and your insured, Keller North America, Inc, ("Keller"),  by the County of Metcalfe, Kentucky ("Metcalfe"). I am submitting an updated tender letter, subsequent to my tender of December 15,2022 now that a lawsuit has been filed. This tender will also correct any spelling errors or misnomers from the first tender. This is a demand for defense, indemnity, and Additional Insured status of Central against Metcalfe's claim.

The Subcontract Agreement from May 24, 2022, between Central and Keller, the Subcontractor,



and Central, the Contractor, obligates Keller to indemnify, defend, and hold harmless Central, as the Contractor, and to list Central as an additional insured on all general liability policies and that any coverage will be primary and noncontributory. Please acknowledge your acceptance of the defense and indemnity of Central, and their status of an Additional Insured under your policy, pursuant to your obligations in the Subcontract Agreement.

Metcalfe alleges property damage to Mosby Ridge Road, a county Road in Metcalfe County. They allege that an employee of either Central or Keller operated heavy equipment on the paved surface and proceeded down the roadway for approximately five miles and it left severe grooves in the roadway.

Our investigation reveals that it is an undisputed fact that it was a Keller employee who operated an excavator down the roadway and caused the damages. The Keller employee should be an experienced professional who should know not to operate the equipment on the roadway, otherwise, it will cause damage. The damages arose out of Keller's employee's operations.

I want to reference the attached Agreement, specifically 9. Indemnification. This section outlines indemnification and defense requirements and obligations.

### 9. INDEMNIFICATION

The Subcontractor shall indemnify, defend and hold Contractor, Owner and their respective agents and employees harmless from and against all claims, demands, losses, attorneys' fees and costs, payments, suits, actions, recoveries and judgments of every nature and description brought or recoverable against Contractor, Owner and their respective agents and employees by reason of any alleged or claimed act, obligation or omission of the Subcontractor in the performance of this Subcontract, including Subcontractor's agents, employees, suppliers, manufacturers, or other persons or entities for whose acts the Subcontractor may be responsible This indemnification provision is triggered by the mere claim, demand, or lawsuit against Contractor, which involves any alleged or claimed act, obligation or omission by Subcontractor in performance of this Subcontract, including any person or entity for which Subcontractor may be responsible. This indemnification agreement is binding on the Subcontractor, to the fullest extent permitted by law, regardless of whether any or all of the persons or entities indemnified hereunder are responsible in part for the claims, damages, losses or expenses for which the Subcontractor is obligated to provide indemnification. This indemnification provision does not negate, abridge or reduce any other rights or obligations of the persons and entities described herein with respect to indemnity.

I would also like to reference 11. INSURANCE. This section outlines the insurance requirements and obligations of Keller to name Central as an additional insured on a primary and non-contributory basis to insurance policies and endorsements.

### 11. INSURANCE

Upon Execution of this Subcontract Agreement, the Subcontractor shall deliver to the Contractor certificate(s) from Subcontractor's insurers certifying policy number, expiration dates, limits, etc., which certificate(s) shall provide that the policies represented thereon shall neither be canceled, altered, or changed until ten (10) days after actual receipt by the Contractor of written notice from the insurer of its intention to make such cancellation, alteration, or change.

The Subcontractor shall procure and maintain in force worker's compensation insurance,
employer's liability insurance, comprehensive general liability insurance, automobile
liability insurance and all insurance required of the Contractor under the Contract
Documents. The required policies shall be obtained from insurance companies with and
A.M. Best Financial Strength Rating of no less than "A-". Subcontractor shall maintain
at least the following limits of insurance coverage:

(I.) General Liability

| | |
|---|---|
| Coverage Details: | Commercial General Liability (must be maintained for at least 5 yrs or as required by contract) |
| | Occurrence Form- Per Project/Location Aggregate Limit |
| | Contractual Liability |
| | Explosion, Collapse, and Underground Liability (if applicable) |
| | Completed Operations Coverage |
| | Broad Form Property Damage |
| | Independent Contractors |
| | |
| Limits of Insurance: | $2,000,000 General Aggregate |
| | $2,000,000 Products & Completed Operations Aggregate (must be maintained for at least 5 yrs or as required by contract) |
| | $1,000,000 Personal & Advertising |
| | $1,000,000 Each Occurrence |

(III.) Excess or Umbrella Liability
Limits of Liability:        $1,000,000

Subcontractor shall provide Contractor with a certificate of insurance certifying
that the required insurance policies are effective and will not be cancelled during
the Subcontractor's performance of this Subcontract. In addition, the
Subcontractor shall procure and maintain insurance coverage, endorsements and
policy limits as shall be acceptable to Contractor, providing coverage for all
exposures to liability for pollutants, hazardous materials, and environmental
hazards. Subcontractor is required to obtain a waiver of Subrogation on the CGL,
Business Automobile, Workers' Compensation and Umbrella Liability
policies.

The Contractor and Owner shall be named as an additional insured on each of
these policies except for worker's compensation. All applicable additional Insured
Standard Endorsements are required. All policies with the exception of workers
compensation shall include a waiver of subrogation. The Subcontractor shall
maintain in effect all insurance coverage required under this Subcontract at the
Subcontractor's sole expense and with insurance companies acceptable to the
Contractor and shall provide Contractor with written proof of such coverage at the



Contractor's discretion. This insurance coverage provided by Subcontractor shall be primary and non-contributory to any other insurance. Thirty (30) days notice of cancellation is required. Builder's Risk/Installation Floater (if required) in an amount equal to your contract

Pursuant to the Subcontract Agreement, Central is required to be an additional insured on your commercial general liability policy and excess policies and the coverage is to be on a primary and non-contributory basis. As the incident arose out of your insured's operations, we are requesting a full tender of both defense and indemnity on behalf of our insured, Central, as well as additional insured coverage.

Per your insured's Policy, as referenced in your letter dated January 18, 2023, your insured carries the following Additional Insured endorsement:

The Policy contains the following endorsement written on form CG 20 26 12 19, which reads in pertinent part as   follows:

**ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION**
* * *
**SCHEDULE**
**Name of Person(s) Or Organization(s) (Additional Insured):**
Any person or organization that you are required in a written contract or written agreement to include as an additional insured provided the "Bodily Injury" or "Property Damage" occurs subsequent to the execution of the contract or written agreement

**A. Section II — Who Is An Insured** is amended to include as an additional insured
  the person(s) or organization(s) shown in the Schedule, but only with respect
  to liability for "bodily injury", "property damage" or "personal and advertising
  injury" caused, in whole or in part, by your acts or omissions of the acts of those
  acting on your behalf:

  1. In the performance of your ongoing operations; or
  2. In connection with your premises owned by or rented to you.

  However:

  1. The insurance afforded to such additional insured only applies to the
     extent permitted by law; and
  2. If coverage provided to the additional insured is required by a contract or
     agreement, the insurance afforded to such additional insured will not be
     broader than that which you are required by the contract or agreement to
     provide for such additional insured.

Upon reviewing Keller's policy language, Central would qualify as an additional insured because the contract requires that they be included as an additional insured. Also, the damages occurred as a result of the acts of the Keller employee during their ongoing operations.

Please respond immediately as the lawsuit has been filed and a response is due 20 days upon

Filed    Case 1:25-cv-00010-GNS-HBB    Document 1-2    Filed 01/21/25    Page 36 of 51 PageID
24-CI-00170    12/23/2024    Tommy A. Garrett, Metcalfe Circuit Clerk
#: 43

service. I have attached a copy for your review.


Sincerely,

Erin Fowler
Claim Professional

Enclosures



This page was intentionally left blank

Filed     Case 1:25-cv-00010-GNS-HBB   Document 1-2   Filed 01/21/25   Page 38 of 51 PageID
24-CI-00170     12/23/2024     Tommy A. Garrett, Metcalfe Circuit Clerk
#: 45

September 12, 2023

***VIA EMAIL ONLY***
**Erin Fowler**
The Charter Oak Fire Insurance Company
P.O. Box 430
Buffalo, NY 14240-0430
EPFOWLER@travelers.com

<div align="center">

### DENIAL OF COVERAGE

</div>

> **RE:**     ***County of Metcalfe Kentucky Fiscal Court v. Central Bridge Company, LLC,***
> ***and Keller – North America, Inc.***
> *Commonwealth of Kentucky, Metcalfe Circuit Court*
> *Case No. 23-CI-00100 (the "Lawsuit")*

| | |
|---|---|
| Your Insured: | Central Bridge Company, LLC |
| AXA XL Insured: | Keller North America, Inc. |
| AXA XL Claim No.: | 10115060 |
| AXA XL Policy No.: | US00029022LI22A *eff.* 06/01/22 to 06/01/23 |
| Date of Loss: | 08/15/2022 |

Dear Ms. Fowler:

XL Insurance America, Inc. ("XL") is the Commercial General Liability insurance carrier for Keller North America, Inc. ("Keller") with respect to the above Policy (the "XL Policy" or "Policy").

This will acknowledge receipt of your letter dated August 17, 2023, etter, wherein The Charter Oak Fire Insurance Company ("Travelers"), as the commercial general liability insurance carrier for Central Bridge Company, LLC. ("Central"), seeks defense, indemnification and additional insured status for Central under the above referenced XL Policy issued to its named insured, Keller, for allegations of property damage that arose out of the below discussed claim.

We have reviewed the information provided us in an effort to determine what rights or coverage, if any, Central may be entitled to pursuant to the terms of the XL Policy and the Subcontract Agreement as entered into between Central and Keller.

Upon our review of the applicable contract between Central and Keller, in conjunction with the XL Policy and the alleged facts of the claim, we have determined that your tender is premature at this time and there is no additional insured coverage available to Central. XL takes this opportunity to discuss its coverage determination below.

<div align="center">

* * *

</div>

XL Insurance America, Inc.
505 Eagleview Blvd., Suite 100, Exton, Pennsylvania 19341
Telephone: +1 610 968 2999   **axaxl.com**

<div style="writing-mode: vertical-rl; text-align: right">

Package : 000039 of 000050

Presiding Judge: HON. JOHN T. ALEXANDER (643358)

I0039 of 000050

</div>



## THE LAWSUIT

The Complaint filed in the above captioned Lawsuit alleges in pertinent part as follows:

1. That on or about August 15, 2022 in Metcalfe County, Kentucky the Defendants, CENTRAL BRIDGE COMPANY and/or KELLER — NORTH AMERICA, INC., their agents or employees, and/or other unknown Defendants, negligently caused damage to the surface of Mosby Ridge Road, a county road in Metcalfe County, Kentucky, for a distance of approximately five (5) miles, by entering onto the recently paved surface and proceeding down said road with heavy equipment that left severe grooves in the surface.

2. That as a result of the negligence of the Defendants, as set out above, the road was damaged in the amount of at least Two Hundred Forty-Five Thousand, Nine Hundred Eighty-Five Dollars ($245,985), based on estimates obtained to date.

\* \* \*

## THE SUBCONTRACT AGREEMENT

Central and Keller entered into a Subcontract Agreement (the "Subcontract") effective May 24, 2022. The Subcontract provides in pertinent part as follows:

**9. INDEMNIFICATION**
The **Subcontractor shall indemnify, defend and hold Contractor, Owner and their respective agents and employees harmless from and against all claims**, demands, losses, attorneys' fees and costs, payments, suits, actions, recoveries and judgments of every nature and description brought or recoverable against Contractor, Owner and their respective agents and employees **by reason of any alleged or claimed act, obligation or omission of the Subcontractor in the performance of this Subcontract,** including Subcontractor's agents, employees, suppliers, manufacturers, or other persons or entities for whose acts the Subcontractor may be responsible. This indemnification provision is triggered by the mere claim, demand, or lawsuit against Contractor, **which involves any alleged or claimed act, obligation or omission by Subcontractor in performance of this Subcontract, including any person or entity for which Subcontractor may be responsible.** This indemnification agreement is binding on the Subcontractor, to the fullest extent permitted by law, regardless of whether any or all of the persons or entities indemnified hereunder are responsible in part for the claims, damages, losses or expenses for which the Subcontractor is obligated to provide indemnification. This indemnification provision does not negate, abridge or reduce any other rights or obligations of the persons and entities described herein with respect to indemnity. (emphasis added).

\* \* \*

**11. INSURANCE**
Upon Execution of this Subcontract Agreement, the Subcontractor shall deliver to the Contractor certificate(s) from Subcontractor's insurers certifying policy number, expiration dates, limits, etc., which certificate(s) shall provide that the policies represented thereon shall neither be canceled, altered, or changed until ten (10) days after actual receipt by the

Package : 000040 of 000050

Presiding Judge: HON. JOHN T. ALEXANDER (643358)

Package : 000040 of 000050

Filed            24-CI-00170        12/23/2024        Tommy A. Garrett, Metcalfe Circuit Clerk

Contractor of written notice from the insurer of its intention to make such cancellation, alteration or change. The Subcontractor shall procure and maintain in force worker's compensation insurance, employer's liability insurance, comprehensive general liability insurance, automobile liability insurance and all insurance required of the Contractor under the Contract Documents. The required policies shall be obtained from insurance companies with and A.M. Best Financial Strength Rating of no less than "A-". Subcontractor shall maintain at least the following limits of insurance coverage:

(I.) General Liability

Coverage Details:
Commercial General Liability (must be maintained for at least 5 yrs or as required by contract)
Occurrence Form- Per Project/Location Aggregate Limit
Contractual Liability
Explosion, Collapse, and Underground Liability (if applicable)
Completed Operations Coverage
Broad Form Property Damage
Independent Contractors

Limits of Insurance:
$2,000,000 General Aggregate
$2,000,000 Products & Completed Operations Aggregate (must be maintained for at least 5 yrs or as required by contract)
$1,000,000 Personal & Advertising
$1,000,000 Each Occurrence

(III.) Excess or Umbrella Liability Limits of Liability:
$1,000,000

Subcontractor shall provide Contractor with a certificate of insurance certifying that the required insurance policies are effective and will not be cancelled during the Subcontractor's performance of this Subcontract. In addition, the Subcontractor shall procure and maintain insurance coverage, endorsements and policy limits as shall be acceptable to Contractor, providing coverage for all exposures to liability for pollutants, hazardous materials, and environmental hazards. Subcontractor is required to obtain a waiver of Subrogation on the CGL, Business Automobile, Workers' Compensation and Umbrella Liability policies.

The Contractor and Owner shall be named as an additional insured on each of these policies except for worker's compensation. All applicable additional Insured Standard Endorsements are required. All policies with the exception of workers compensation shall include a waiver of subrogation. The Subcontractor shall maintain in effect all insurance coverage required under this Subcontract at the Subcontractor's sole expense and with insurance companies acceptable to the Contractor and shall provide Contractor with written proof of such coverage at the Contractor's discretion. This insurance coverage provided by Subcontractor shall be primary and non-contributory to any other insurance. Thirty (30) days notice of cancellation is required. Builder's Risk/Installation Floater (if required) in an amount equal to your contract

* * *

Package : 000041 of 000050

Presiding Judge: HON. JOHN T. ALEXANDER (643358)

I0041 of 000050



Filed          24-CI-00170    12/23/2024    Tammy A. Garrett, Metcalfe Circuit Clerk

## THE XL POLICY

XL issued Commercial General Liability Policy US00029022LI22A *eff.* 06/01/22 to 06/01/23 to Keller. The Policy contains limits of $2,500,000 per occurrence. The Policy's relevant terms, conditions, exclusions, definitions and endorsements are provided for your convenience. Please refer to the actual XL Policy for all terms, conditions, exclusions, definitions and endorsements.

In pertinent part, the XL policy provides as follows:

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**I. Insuring Agreement**

a.  We will pay those sums that the insured becomes legally obligated to pay as damages Because of "bodily injury" and "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result...

b.  This insurance applies to "bodily injury" and "property damage" only if:

   (1) The "bodily injury" and "property damage" is caused by an "occurrence" that takes place in the "coverage territory":
   (2) The "bodily injury" or "property damage" occurs during the policy period:...

* * *

**2. Exclusions**

This insurance does not apply to:

a.  **Expected Or Intended Injury**
    "Bodily injury" or "property damage" expected or intended from the standpoint of the insured. This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

b.  **Contractual Liability**
    "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not apply to liability for damages:
    (1) That the insured would have in the absence of the contract or agreement; or
    (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorneys' fees and necessary litigation expenses incurred by or for a party other than an insured are deemed to be damages because of "bodily injury" or "property damage", provided:

Package : 000042 of 000050

Presiding Judge: HON. JOHN T. ALEXANDER (643358)

Package : 000042 of 000050

Filed    Case 1:25-cv-00010-GNS-HBB   Document 1-2   Filed 01/21/25   Page 42 of 51 PageID
24-CI-00170    12/23/2024    Tommy A. Garrett, Metcalfe Circuit Clerk
#: 49

**(a)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and

**(b)** Such attorneys' fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

\* \* \*

### SECTION V – DEFINITIONS

\* \* \*

2. "Bodily injury" means bodily injury, sickness or disease sustained by a person, including death resulting from any of these at any time.

\* \* \*

13. "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

\* \* \*

18. "Suit" means a civil proceeding in which damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies are alleged. "Suit" includes:

    a. An arbitration proceeding in which such damages are claimed and to which the insured must submit or does submit with our consent; or

    b. Any other alternative dispute resolution proceeding in which such damages are claimed and to which the insured submits with our consent.

\* \* \*

The Policy contains the following endorsement written on form CG 20 26 12 19, which reads in pertinent part as follows:

### ADDITIONAL INSURED - DESIGNATED PERSON OR ORGANIZATION
\* \* \*
### SCHEDULE

**Name of Person(s) Or Organization(s) (Additional Insured):**
Any person or organization that you are required in a written contract or written agreement to include as an additional insured provided the "Bodily Injury" or "Property Damage" occurs subsequent to the execution of the contract or written agreement

**A. Section II — Who Is An Insured** is amended to include as an additional insured the person(s) or organization(s) shown in the Schedule, but only with respect to liability for "bodily injury", "property damage" or "personal and advertising injury" caused, in whole or in part, by your acts or omissions of the acts of those acting on your behalf:

    1. In the performance of your ongoing operations; or

    2. In connection with your premises owned by or rented to you.

However:

Package : 000043 of 000050

Presiding Judge: HON. JOHN T. ALEXANDER (643358)

I0043 of 000050



Case 1:25-cv-00010-GNS-HBB        Document 1-2        Filed 01/21/25        Page 43 of 51 PageID #: 50

Package : 000044 of 000050                    Presiding Judge: HON. JOHN T. ALEXANDER (643358)                    Package : 000044 of 000050

1. The insurance afforded to such additional insured only applies to the extent permitted by law; and
2. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

**B.** With respect to the insurance afforded to these additional insureds, the following is added to **Section III – Limits Of Insurance:**

If coverage provided to the additional insured is required by a contract or agreement, the most we will pay on behalf of the additional insured is the amount of insurance:

1. Required by the contract or agreement; or
2. Available under the applicable limits of insurance; whichever is less.

This endorsement shall not increase the applicable limits of insurance.

\* \* \*

## DENIAL OF ADDITIONAL INSURED COVERAGE

We have reviewed the claim as currently presented, along with the Subcontract and the XL Policy and have determined that your tender for additional insured status is premature at this time and therefore, XL respectfully denies your tender for additional insured status. There is no additional insured coverage available to Central.

For coverage to potentially apply under the XL Policy, the claim must seek to impose on Central a legal obligation to pay damages because of "property damage" caused by an "occurrence" that takes place during the policy period. However, per the terms of the Insuring Agreement discussed above, XL has no duty to defend Central against any "suit" seeking damages for "property damage" to which this insurance does not apply.

"Property damage" is defined under the XL Policy as physical injury to tangible property, including all resulting loss of use of that property, or loss of use of tangible property that is not physically injured. "Occurrence" is defined as in the XL Policy to mean an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

The August 17, 2023, tender letter, alleges the following:

> Metcalfe alleges property damage to Mosby Ridge Road, a county Road in Metcalfe County. They allege that an employee of either Central or Keller operated heavy equipment on the paved surface and proceeded down the roadway for approximately five miles and it left severe grooves in the roadway.

> Our investigation reveals that it is an undisputed fact that it was a Keller employee who operated an excavator down the roadway and caused the damages. The Keller employee should be an experienced professional who should know not to operate the equipment on the roadway, otherwise, it will cause damage. The damages arose out of Keller's employee's operations.

The above referenced Additional Insured endorsements will not cover the independent acts or omissions of Central. The Additional Insured endorsement amends Section II – Who Is An Insured, to include Central as an additional insured per the Subcontract entered into between Central and Keller, but only with respect to liability for "property damage" caused, in whole or in part, by Keller's acts or omissions; or the acts or omissions of those acting on Keller's behalf. Therefore, there is no additional insured coverage available for any liability arising out of Central's own independent acts, omissions and/or negligence. XL reserves all rights accordingly.

Here, the Contract at issue as Attachment B, Page 2, Conditions, Section 2., states that '[A]n access road must be furnished and maintained by others." It is XL's understanding that Central was to provide Keller with an access road to be furnished and maintained by Keller. Therefore, any alleged damages related to the road at issue in the Lawsuit were the independent responsibility of Central, not Keller.

The above referenced Additional Insured endorsement states the following:

1. If coverage provided to the additional insured is required by a contract or agreement, the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide for such additional insured.

***

Therefore, as potential additional insured coverage can not be broader than the contract at issue, and the contract states the furnishing and maintenance of the access road was the sole responsibility of Central, there can be no additional insured coverage available to Central under the XL policy issued to Keller.

Further, to the extent Plaintiff's claims against Central are based on the provisions of a contract, pursuant to the Policy's contractual liability exclusion, XL would have no obligation to defend or indemnify Central, to the extent it qualified as an additional insured, should the contract not meet the Policy's definition of an "insured contract". XL reserves the right to further limit or deny coverage to the extent that the Policy's contractual liability exclusions apply.

## CONCLUSION

For the reasons discussed above, XL regretfully informs you that there is no additional insured coverage available to Central.

Please note that XL's coverage position is based upon the information presently available to us. This letter is not, and should not be construed, as a waiver of any terms, conditions, exclusions, or other provisions of the XL Policy. XL expressly reserves all rights under the XL Policy, including the right to amend or supplement its position in this letter as well as to assert additional defenses to any claims for coverage, if subsequent information warrants such action.

Package : 000045 of 000050

Presiding Judge : HON. JOHN T. ALEXANDER (643358)

I0045 of 000050



Should you have additional information that you feel would either cause us to review our position or would assist in our investigation or determination, we ask that you advise us as soon as possible. Also, if you are served with any additional demands or complaints, please forward immediately so that we can review our coverage position.

Further, it is our understanding that Keller has a Master Policy in the UK. We forwarded this matter to our colleagues in the UK to verify if coverage may be afforded on a DIC (difference in condition) basis. Our understanding is that a separate Master claim file will be created for review there. While there may not be coverage under the Master Policy, you may want to formally report through you Master broker in the UK for confirmation.

In closing, we encourage you to contact us should you have questions or concerns regarding the contents of this letter. Thank you for your cooperation in this matter.

Sincerely,

*Rita S. Carter*

**Rita S. Carter**
Senior Claims Specialist – Global Claims
AXA XL, a division of AXA*
505 Eagleview Blvd.
Exton, PA 19341
Rita.Carter@axaxl.com
Direct:    +1 610-968-9428
Mobile:   +1 610-427-3767

**Cc via email only :**
John Feliccia, Keller – North America
John.Feliccia@keller-na.com



Erin Fowler
**The Charter Oak Fire Insurance Company**
*Claim Representative*

*Mailing Address:*
*P.O. Box 430*
*Buffalo, NY 14240-0430*

*(216)750-4082(phone)*
*(877) 389-4687 (fax)*
*EPFOWLER@travelers.com*

October 6, 2023

Sent via email only: rita.carter@axaxl.com

XL Insurance America Inc.
Attn: Rita Carter

| | | |
|---|---|---|
| Subject: | Our Insured: | Central Bridge Company, LLC |
| | Your Insured: | Keller North America, Inc. |
| | Claimant: | Metcalfe County Kentucky Fiscal Court |
| | Date of Loss: | 8/15/2022 |
| | Our Claim Number: | FDV1677 |
| | Your Claim: | 10115060 |
| | Re; | *County of Metcalfe, Kentucky v Central Bridge Company, LLC.; and Keller-North America, Inc.,* No. 23-CI-00100, Metcalfe Circuit Court, Commonwealth of Kentucky |

Dear Ms. Carter:

As you are aware, The Charter Oak Fire Insurance Company ("Travelers") is the general liability carrier for Central Bridge Company, LLC ("Central Bridge"). We are in receipt of your September 12, 2023, letter denying the tender on behalf of Central Bridge relative to a recently filed lawsuit captioned County of Metcalfe, Kentucky v. Central Bridge Company, LLC, and Keller – North American, Inc. Travelers strongly disagrees with the tender denial and requests that XL Insurance America, Inc. ("XL") immediately revisit its coverage determination.

Initially, there is no dispute that Central Bridge retained your named insured, Keller North America Inc. ("Keller"), to perform work at the subject jobsite. While performing that work, an employee of Keller drove an excavator across a freshly paved roadway causing damage. The County now seeks recovery for that damage.



Prior to this incident, Central Bridge and Keller entered into Subcontract Agreement for this work wherein Keller agreed to obtain commercial general liability coverage and name Central Bridge as an additional insured on that coverage on a primary and non-contributory basis. Keller appears to have complied with that obligation by obtaining the XL policy.

Your denial letter indicates that the XL policy includes form CG 20 26 12 19, which affords coverage for "[a]ny person or organization that you are required in a written contract or written agreement to include as an additional insured…" It then provides that the scheduled person or organization will be an additional insured with respect to liability "caused, in whole or in part, by [Keller's] acts or omissions or the acts of those acting on your behalf…in the performance of your ongoing operations…"

The Complaint filed by the County of Metcalf against Central Bridge and Keller alleges that:

- Defendants negligently caused damage to the surface of Mosby Ridge Road, a county road in Metcalf County, Kentucky, for a distance of approximately five (5) miles, by entering into the recently paved surface and proceeding down said road with heavy equipment that left severe grooves in the surface.
- That as a result of the negligence of defendants, the road was damaged.

These are clear allegations by the County that the damage was caused "in part" by Keller. Yet, despite these clear allegations and the terms of its own policy, XL has denied Central Bridge's tender and refused to defend or indemnify it.

XL's denial letter initially submits that the tender is premature. That is not accurate. A lawsuit has now been filed against Central Bridge which includes straightforward allegations that implicate Keller's work. Where XL has a duty to defend an additional insured under its policy for a "suit," and where a "suit" has been filed that includes allegations that the claimed damages were caused "in part" by Keller's work, XL's duty to defend Central Bridge is triggered and the tender is not premature.

XL then submits that coverage is not owed because the XL policy does not cover the independent acts of Central Bridge. That too is not accurate. Again, the additional insured endorsement cited in your letter provides that coverage will be provided to Central Bridge for property damage "caused, in whole or in part, by [Keller's] acts or omissions…in the performance of your ongoing operations…"

This is significant because XL's coverage is triggered in favor of Central Bridge as long as the loss was caused "in part" by Keller's acts or omissions. While we submit that Central Bridge was not responsible for this damage, even if it contributed to the loss, that does not change XL's obligations to afford additional insured status to Central Bridge. Again, as long as Keller is even 1% responsible for this loss, XL owes coverage to Central Bridge. That is what "in part" means under the terms of the XL policy. And, here, where Keller's employee drove the equipment across the freshly paved road, Travelers is very confident that the loss was caused "in part" by Keller's acts or omissions.

Next, XL's denial letter takes the position that the "potential additional insured coverage cannot be broader than the contract at issue" and because "the contract states the furnishing and maintenance of the access road was the sole responsibility of Central, there can be no additional insured coverage available to Central under the XL policy." Respectfully, there is no basis for this position under the cited terms of the XL policy.

Section 11 of the subcontract between Central Bridge and Keller includes no limitation as to the scope of the general liability insurance being afforded. There is no language, for example, that Keller agrees to afford coverage only for its negligent acts. Thus, the language cited that "the insurance afforded to such additional insured will not be broader than that which you are required by the contract or agreement to provide to such additional insured," has no application because the subcontract included no limitation to the insurance coverage. Asserting that Central Bridge was obligated to furnish and maintain the access road is a liability argument, not a coverage argument.

Lastly, any general denial of coverage for contractual liability has no impact on XL's obligations to Central Bridge since there are no allegations in the Complaint based upon a contract or breach thereof. It simply claims the defendants were negligent.

For the reasons outlined above, Travelers reiterates its request that XL revisit its coverage position and acknowledge both a duty to defend and indemnify Central Bridge. To continue to decline XL's clear obligations in favor of Central Bridge, will simply result in both carriers needlessly incurring additional costs and expenses. I would appreciate a response in the next week. Please be advised that if XL maintains its position that is owes neither a defense nor indemnity to Central Bridge, Travelers will be reviewing its legal options including filing a declaratory judgment action against XL.

Sincerely,

*Erin Fowler*

Erin Fowler
Claim Professional



This page was intentionally left blank

CERTIFIED MAIL™

quadient

FIRST-CLASS MAIL
IMI
**$017.96** ⁰
12/23/2024 ZIP 40601
043M31236114

US POSTAGE

A. Garrett, Metcalfe Circuit

x 27, 201 E. Stockton

ton, KY 42129-0485

## USPS CERTIFIED MAIL



9236 0901 9403 8393 1688 11

Number: 24-CI-00170

Restricted Delivery

XL INSURANCE AMERICA INC.
TONI A. PERKINS, 677 WASHINGTON BLVD.,
10TH FLOOR, SUITE 1000
STAMFORD, CT 06901
Case Number: 24-CI-00170

RECEIVED DEC 3 0 2024

Notice — Carriage hereunder may be subject to the rules relating to liability and other terms and/or conditions Consumer Content established in the Convention for the Unification of Certain Rules Relating to International Carriage by Air (the "Warsaw Convention") and/or the Contract for the International Carriage of Goods by Road (the "CMR Convention"). These commodities, technology or are exported from the U.S. in accordance with the Export Administration Regulations. Diversion contrary to U.S. law prohibited.

TIFFANY BUCKLEY
8602933150
XL GLOBAL SERVICE
677 WASHINGTON BLVD
STAMFORD CT 06901

1 LBS          1 OF 1

SHIP TO:
NATALIE OSMAN
8003271414
AXA XL
100 CONSTITUTION PLAZA
HARTFORD CT 06103



CT 061 9 - 03

## UPS GROUND
TRACKING #: 1Z E44 2F6 03 9704 1109



BILLING: P/P

XOL 24.11.13        NV45 53.0A 12/2024



For information about UPS's privacy practices or to opt out from the sale of personal information, please see the UPS Privacy Notice at www.ups.com

Serving you for more than 110 years
United Parcel Service.®

Do not use this envelope for:

UPS Ground
UPS Standard
UPS 3 Day Select®

UPS 2nd Day Air®
UPS Worldwide Expedited®

01019510U   04/21   PAC   United Parcel Service



